UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GENNADY GORELIK, on behalf of self and all
others similarly situated,

                        Plaintiffs,

     -against-

JONATHAN LIPPMAN, Chief Administrative
Judge of New York State Courts; JACQUELINE
W. SILBERMANN, New York Statewide
Administrative Judge for Matrimonial Matters;
MICHAEL A. AMBROSIO, Acting Justice of
Supreme Court of Kings County,

                        Defendants.
---------------------------------------------------------------X

**MEMORANDUM and ORDER**

No. 05-CV-5639 (SLT)

**TOWNES, United States District Judge:**

     Plaintiff, Gennady Gorelik, whose child custody case was initially handled by an allegedly corrupt State court judge, brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights by, *inter alia*, failing to overturn the judge's decisions. Although plaintiff has paid the requisite fee to file this action, this Court nonetheless dismisses the complaint for the reasons set forth below.

## BACKGROUND

     In 2002 and 2003, plaintiff and his former wife, Elena, were adversaries in a post-divorce child custody case before Kings County Supreme Court Justice Gerald P. Garson. Sometime after this action commenced, Elena retained Paul Siminovsky, Esq., as her counsel. The circumstances surrounding her decision to retain Siminovsky are not alleged in the complaint, and plaintiff makes no claims relating to this decision.

     In 2003, Justice Garson was indicted on various charges in connection with allegations that he received bribes and unlawful gratuities. *See People v. Garson*, 4 Misc.3d 258, 260, 775

N.Y.S.2d 827, 830 (N.Y. Sup. Ct. Kings County 2004). Although there is no need to detail the exact charges, this Court will take judicial notice that the superceding indictment alleged, *inter alia*, that Garson received a gift for agreeing to engage in *ex parte* conversations with Siminovsky, and accepted "referral fees" for referring potential clients to Siminovsky. *See id.*, 4 Misc.2d at 261-62, 775 N.Y.S.2d at 831; *Nathan B. v. Inbar B.*, No. 48288-2000, 2005 WL 1774138, at *2 (N.Y. Sup. Ct., Kings Co. May 26, 2005).

Garson was suspended from office by the New York Court of Appeals on May 22, 2003. *In re Garson*, 100 N.Y.2d 533, 534, 762 N.Y.S.2d 871, 871 (2003). On or before that date, plaintiff's child custody case was reassigned to defendant Justice Michael A. Ambrosio. In March 2004, Justice Ambrosio conducted a trial and awarded sole custody of plaintiff's children to plaintiff's wife.

Although plaintiff's complaint alleges such irregular proceedings as an *ex parte* conference between Justice Garson and Siminovsky and plaintiff's exclusion from the courtroom at times when his case was on the calendar, Complaint at ¶¶ 52, 62, plaintiff does not seek to challenge the outcome of his child custody case. *Id.* at ¶ 69. Rather, this action relates primarily to the defendants' refusals to overturn Justice Garson's rulings directing plaintiff and Elena to pay fees to a court-appointed psychologist and a guardian *ad litem* (collectively, "the Appointees"). In addition, plaintiff's complaint implicitly seeks an order enjoining Justice Ambrosio from ruling on Elena's motion for attorney's fees and her half of the Appointees' fees.

<u>The Facts relating to the Appointees</u>

In February 2002, former Justice Garson appointed Cheryl Solomon, Esq., as guardian *ad litem* for plaintiff's children. A month later, he appointed a psychologist, Marie Weinstein, Ph.D., as a forensic evaluator. According to plaintiff's complaint, both of these Appointees had

2

offices at 26 Court Street, Brooklyn – the same office building in which Justice Garson had his office before he assumed the bench. Complaint at ¶ 50.

On or about December 14, 2002, Dr. Weinstein produced an 86-page report, for which she billed approximately $30,000. At about the same time, Ms. Solomon submitted a bill of $20,000, alleging, *inter alia*, that she had spoken with Dr. Weinstein on 59 different occasions. After Justice Garson ordered plaintiff and his former wife to split these bills, plaintiff requested that his lawyer "bring the excessiveness of the court appointees' bills to the attention of Justice Garson." *Id.* at ¶ 60. Plaintiff's counsel allegedly did so in an off-the-record conference conducted in the absence of the parties in the judge's robing room. *Id.* Immediately thereafter, plaintiff's attorney told plaintiff, "The judge asked [me] to tell you that if you do not pay your portion of Dr. Weinstein's bill before the end of the month, you will be sorry." *Id.* at ¶ 61. Plaintiff paid Dr. Weinstein within a month of this conversation, and within a day of being informed that Siminovsky and Solomon had met with Justice Garson *ex parte* to encourage the judge to hold plaintiff in contempt. *Id.* at ¶¶ 62-63.

In September 2003, after the case had been transferred to Justice Ambrosio, plaintiff made a motion concerning the perceived "billing improprieties of the Garson[] appointees." *Id.* at ¶ 64. Justice Ambrosio not only summarily dismissed this motion, but directed plaintiff to pay Dr. Weinstein an additional $800. *Id.* at ¶ 65. In addition, after Justice Ambrosio ruled against plaintiff on the custody issue, Elena moved to recover her attorney's fees and her half of the Appointees' fees from plaintiff. *Id.* at ¶ 70. Although Justice Ambrosio had not yet ruled on this motion as of the date the plaintiff's complaint was filed, the complaint alleges that Justice Ambrosio has examined the bills submitted by Siminovsky and the Appointees and has said he sees "nothing to suggest any impropriety." *Id.* at ¶ 72.

In addition to challenging the allegedly excessive fees in court, plaintiff has complained to the New York State Department of Education and to various court administrators, including defendant Jonathan Lippman.[1] Justice Lippman referred plaintiff's complaint to defendant Jacqueline W. Silbermann – the Statewide Administrative Judge for Matrimonial Affairs and the judge whom Justice Lippman had appointed in July 2003 to hear any applications pursuant to N.Y.C.P.L.R. § 5015 for relief from judgments or orders entered by Justice Garson. *See Noto v. Noto*, N.Y.L.J., Mar. 24, 2004, at 19 (N.Y. Sup. Ct. Kings County 2004). On December 7, 2004, plaintiff received a response from Judge Silberman which stated, "To the extent you disagree with . . . [Justice Ambrosio's] ruling, your remedy lies with the Appellate Division Second Department." Complaint at ¶ 90.

In May 2005, Justice Ambrosio denied plaintiff's request for discovery relating to Elena's application to recover her attorney's fees and her half of the Appointees' fees. Thereafter, both plaintiff and his mother filed affidavits complaining that Justice Ambrosio had deprived plaintiff of due process and other constitutional rights. When Justice Ambrosio "ignored that issue," plaintiff appealed Justice Ambrosio's decision to the Appellate Division, Second Department. *Id.* at ¶¶ 92-95. That appeal was "denied" without explanation less than ten days after it was filed. *Id.* at ¶ 92.

In December 2005, plaintiff commenced this action pursuant to 42 U.S.C. § 1983. Although plaintiff is proceeding *pro se*, he attempts to bring this case as a class action "on behalf of all litigants . . . whose cases were handled by Gerald Garson and who oppose a) the review procedures used by the Defendants to examine Garson's handling of their cases; and b)

---

[1] At all times relevant to this action, defendant Jonathan Lippman was the Chief Administrative Judge of the New York State Courts. However, this Court will take judicial notice that in November 2005, Chief Administrative Judge Lippman was elected to the Supreme Court, Westchester County. Accordingly, he is hereinafter referred to as Justice Lippman.

4

excessive, unreasonable or unnecessary fees charged by . . . Garson's appointees and not being permitted the opportunity to scrutinize the reasonableness of those fees." Complaint at ¶ 13. Plaintiff's complaint specifically alleges that Justice Ambrosio is biased against plaintiff, and further alleges that defendants' actions violate the substantive and procedural due process rights of plaintiff and the class members. *Id.* at ¶¶ 96-105. In addition, although the complaint expressly states that plaintiff himself is not challenging Justice Ambrosio's custody decision, *id.* at ¶ 69, it implies that defendants have also violated putative class members' liberty interests by interfering with their rights to raise their own children. *Id.* at ¶ 97.

Plaintiff does not seek money damages, but rather declaratory and injunctive relief. In a section explaining the "need for extraordinary relief," the complaint states that, although Justice Ambrosio has not yet ruled on Elena's application for attorney's fees and her half of the Appointees' fees, he "may do so without a hearing in the near future." *Id.* at ¶ 107. In addition, the complaint alleges that Justice "Silbermann may stop accepting motions, pertaining to . . . Garson's closed cases, at any time." *Id.*

## DISCUSSION

When a plaintiff is proceeding *pro se*, the complaint must be read liberally and interpreted as raising the strongest argument it suggests. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citing *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

If it is apparent that an action is frivolous, however, a court may *sua sponte* dismiss a *pro se* complaint, even if the plaintiff has paid the filing fee to initiate the action. *See Fitzgerald v.*

5

*First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000). An action is frivolous when, *inter alia*, it is "based on an indisputably meritless legal theory"– that is, when it "lacks an arguable basis in law. . ., or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal citations omitted). Thus, if it appears from the complaint that the court lacks subject matter jurisdiction, the fact that the plaintiff paid the required fee "does not insulate the complaint from *sua sponte* dismissal for lack of subject matter jurisdiction." *Jones v. Langston*, No. 04-CV-6082T (FE), 2004 WL 1083242, at *2 (W.D.N.Y. May 5, 2004). In addition, courts have an independent obligation to examine the basis of their jurisdiction, *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), and must dismiss a case whenever it appears that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

In determining whether this action is frivolous, this Court need only examine the allegations relating to plaintiff himself. Plaintiff has a right to proceed *pro se* in this action. *See Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) (citing 28 U.S.C. § 1654). However, plaintiff, as a lay person, cannot represent other individuals, *see Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998), and, therefore, cannot bring a class action. *See, e.g., Ackers v. United Nations*, No. 05-CV-1200 (FB), 2005 WL 806592, at *1, n.1 (E.D.N.Y. Apr. 8, 2005) ("a class action cannot be maintained by *pro se* litigants"); *Daniels v. Niagara Mohawk Power Corp.*, No. 04-CV-734S (SC), 2004 WL 2315088, at *1 (W.D.N.Y. Oct. 12, 2004) ("non-attorneys cannot represent anyone other than themselves and cannot prosecute class actions on behalf of others"). Only claims relating to plaintiff himself can be maintained in this action, and all claims relating to putative class members must be dismissed.

All of the claims in the complaint which relate to plaintiff's case are frivolous, both because a dispositive defense is apparent on the face of the complaint and because this Court lacks subject matter jurisdiction. First, it is apparent from the face of plaintiff's complaint that all defendants enjoy judicial immunity, which is a dispositive defense to plaintiff's claims against them. Under the doctrine of judicial immunity, jurists are absolutely immune from lawsuits alleging that they performed their judicial functions improperly or inadequately. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999). Judicial immunity "applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Accordingly, plaintiff cannot sue any of the defendants over the manner in which they executed their judicial duties, even if they are alleged to have executed those duties in a biased or discriminatory manner.

Second, this Court lacks subject matter jurisdiction over plaintiff's attempts to overturn defendants' judicial rulings. "The *Rooker-Feldman* doctrine holds that inferior federal courts lack subject matter jurisdiction 'over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court.'" *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002) (quoting *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 197 (2d Cir. 1996)); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). District Courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).

Although plaintiff is nominally seeking declaratory and injunctive relief, he is implicitly seeking to reverse Justice Garson's and Justice Ambrosio's decisions concerning the

reasonableness of the Appointees' fees. Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to grant such relief.

In addition, to the extent that plaintiff is seeking to enjoin Justice Ambrosio from taking further action in this case or, conversely, to mandate that Justice Lippman and/or Judge Silbermann take action in this case, this Court is precluded from granting such relief by the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971), and progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Although *Younger* itself held only "that federal courts are not to enjoin ongoing state court criminal proceedings except in specific, narrow circumstances," *Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir.), *cert. denied*, 516 U.S. 1012 (1995), "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm.*, 457 U.S. at 432 (citing *Moore v. Sims*, 442 U.S. 415, 423 (1979)). Where such interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore*, 442 U.S. at 425-26.

It is well-established that important state interests are implicated in cases involving child custody and other family matters. *See id.*, 442 U.S. at 435 ("Family relations are a traditional area of state concern."). Moreover, "[p]roceedings necessary for the . . . functioning of the state judicial system also evidence the state's substantial interest in the litigation." *Middlesex County Ethics Comm.*, 457 U.S. at 432. Since this case involves both questions concerning child custody and the reasonableness of fees charged by court-appointed professionals, important state interests are involved in this case.

State law does not bar plaintiff from raising the constitutional challenges set forth in this action upon appeal from whatever judgment Justice Ambrosio may ultimately enter. Indeed, Judge Silbermann implied that plaintiff could raise such challenges to Justice Ambrosio's decision in the Appellate Division, Second Department. Accordingly, the *Younger* abstention doctrine dictates that this Court not intervene in the pending child custody case.

## CONCLUSION

For the reasons set forth above, this action is dismissed. Plaintiff's § 1983 claims against the jurist defendants are frivolous because they are barred by judicial immunity, and because this Court lacks jurisdiction to overturn any State court decisions relating to the allegedly exorbitant fees charged by court-appointed professionals. In addition, under the *Younger* abstention doctrine, this Court abstains from granting any injunctive relief relating to the pending child custody proceedings. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
March 22, 2006